ROGELIA CAMPOS ENCARNACIÓN, Plaintiff and Appellee, *v.*
ALBERTO SEPÚLVEDA ET UX. and JOSÉ MELÉNDEZ, ADM'R,
d/b/a LICEO DE CAPARRA, Defendants and Appellants.

No. R-64-125. Decided February 23, 1967.

*Miguel J. Ríos Lugo* for appellants. *Ismael Cardona* for plaintiff.

Mr. Justice Blanco Lugo delivered the opinion of the Court.

 Considering the remedial purpose of the minimum wage legislation—the improvement of labor conditions to procure the general welfare of the workers by increasing their earning power—we have adopted as a rule that when there is doubt as to whether a decree is applicable to a certain class of employees, a restrictive interpretation excluding them from the protection it affords should not prevail. *Sec. of Labor* v. *Pedro A. Pizá, Inc.*, 86 P.R.R. 423, 429 (1962); *Commissioner of Labor* v. *Llamas*, 73 P.R.R. 847 (1952). As a corollary we stated in *Sierra Núñez* v. *Construction Equipment Corporation*, 90 P.R.R. 136 (1964) and *Sec. of Labor* v. *Cementerio Católico Porta Coeli*, 92 P.R.R. 512 (1965), that the essential basis for fixing minimum wages is the nature of the service to be rendered by the employee who performs it, no matter what type of occupation the enterprise or employer employing him is engaged in, thus ratifying the power granted to the organization which is entrusted with the administration of the public policy to establish reasonable classifications within the different industries. *American R.R. Co.* v. *Minimum Wage Board*, 68 P.R.R. 736 (1948); *Sierra, Sec. of Labor* v. *Bird*, 78 P.R.R. 161 (1955); *Comm'r of Labor* v. *San Miguel Fertilizer Corp.*, 73 P.R.R. 327 (1952). Applying these rules as well as the grounds deduced from the consideration of the definition of the industry, we decide now that a person whose principal work was that of a matron in a school bus is covered by the provisions of Mandatory Decree No. 12, for the transportation service, 29 R.&R.P.R. §§ 245n–191 to 197, and of Mandatory Decree No. 38 for the transporta-

tion industry for local trade, 29 R.&R.P.R. §§ 245n–601 to 606.[1]

The Superior Court, San Juan Part, rendered judgment ordering appellants Alberto Sepúlveda and Rosa Inés Rosa, who had established an elementary school for profit known by the name of Liceo de Caparra, to pay appellee Rogelia Campos Encarnación, the amount of $1,523.38, plus an equal amount as penalty, for (a) half an hour extra worked during the period comprised between September 7, 1955 and May 30, 1961, (b) compensation for vacation for the ten school months, and (c) differences between the wages received and the minimum wage provided in the aforementioned decrees.

Petitioner-appellee received a monthly salary of fifty dollars, that is, approximately thirty-one and one-fourth cents ($0.3125) per hour. From September 7, 1955 to August 25, 1956, effective date of the minimum wage increase established in § 7(b) of Act No. 96 of June 26, 1956, 29 L.P.R.A. § 245f, there is no difference whatsoever in the wages since the minimum wage fixed by Mandatory Decree No. 12, Art. II(B)(f)4, was thirty cents ($0.30). From August 25, 1956 to January 6, 1958,[2] when the provisions as to wages of Decree No. 38 became effective, the minimum wage was thirty-eight cents ($0.38); from January 6, 1958 to Au-

---

[1] As to other applications of Mandatory Decree No. 12 to specific activities, see, *Sierra, Sec. of Labor* v. *Superior Court,* 78 P.R.R. 268 (1955), transportation of agricultural materials furnished to farmers by the employer as a crop loan; *Caguas Bus Line* v. *Comm'r of Labor,* 73 P.R.R. 690 (1952), starters in a bus line; *Sierra, Commissioner* v. *Morales,* 72 P.R.R. 647 (1951), transportation of merchandise to different clients from a warehouse devoted to wholesales; *Rodríguez* v. *Fonalledas,* 72 P.R.R. 49 (1951), transportation of milk from the dairy to the employer's clients for home delivery.

[2] Although Mandatory Decree No. 38 became effective on January 19, 1958 the minimum wages established therein were retroactive to January 6 of that year, pursuant to § 14 of the Minimum Wage Act, 29 L.P.R.A. § 245m.

gust 16, 1960 the minimum wage was forty-five cents ($0.45), pursuant to Art. IV (C) (1) (c) of Mandatory Decree No. 38; and from August 16, 1960 to May 30, 1961, the minimum wage was fifty cents ($0.50), pursuant to Art. II (C) (2) (d) of the first revision of said decree.[3]

Furthermore, Art. V (B) of Mandatory Decree No. 12, 29 R.&R.P.R. § 245n–195, established that every employee was entitled to vacation leave with full pay at the rate of one day for each month in which he has had at least 100 hours of work. This right subsists by express order of § 40 (b) of the Minimum Wage Act of 1956, 29 L.P.R.A. § 246k.[4]

The principal work of petitioner consisted in picking up the children in the morning before classes started, watch for their safety in boarding and alighting from the bus and accompanying them on their return trip to their homes during the early afternoon hours, after schooltime. Between both activities she remained in the school premises. During this period she was assigned some tasks and chores: she prepared and served the snack to the children, which barely took about half an hour daily; she received the money sent by the parents as payment for the monthly tuition, occasionally substituted the teachers who were absent, although she did not do any pedagogical work; she answered the telephone and received the visitors. An examination of the transcript leaves the impression that this was a waiting period, interrupted by the incidental tasks aforementioned. See *Heirs of Meléndez* v. *Central San Vicente*, 86 P.R.R. 377 (1962), and *Deyá* v. *Otis Elevator Co.*, 91 P.R.R. 649 (1965).

---

[3] The second revision of Mandatory Decree No. 38, which went into effect on September 23, 1962, fixed a minimum wage of sixty-three cents ($0.63); the third revision which went into effect on May 29, 1965, seventy cents ($0.70).

[4] "The provisions contained in the mandatory decrees in force on the date this act is approved, other than those relative to minimum wage, shall subsist with full force and effect even if the Board shall subsequently, by decree or order to that effect, change the minimum wage rates."

1. "Transportation service" is defined in Mandatory Decree No. 12 and the "transportation industry" in Mandatory Decree No. 38 in the sense that it "shall comprise, but without limitation, every act, process, operation, work or service that is necessary or *incidental* or is related to the transportation or *conveyance of persons* or things, from one place to another, *by or in any kind of motor vehicle*, including those that run by rails." (Italics ours.) The only exclusion[5] which is pertinent here is the one referring to the transportation performed by any employer in vehicles of his own for purposes or in relation to his industry if (a) any other mandatory decree, or, (b) any federal wage order is applicable thereto. It is well-known that the educational activity in which appellants were engaged is not covered either by a decree or by a federal order, the exclusion adduced being thus inapplicable.

Since the approval of the original Mandatory Decree No. 12 there exists, for the purpose of fixing minimum wages, the classification of omnibus, which was defined then as "a heavy motor vehicle acting as public carrier with a capacity of more than ten (10) passengers, not including the chauffeur." When Mandatory Decree No. 38 was adopted in 1958 the definition subsisted, but the requirement that it should act as a public carrier was eliminated. This definition has remained the same up to the present.

In fixing minimum wages Mandatory Decree No. 38 subclassified the omnibus employees according to the zones where they rendered services[6] and the skills required for

---

[5] The other exclusions refer to (1) over-sea and air transportation activities covered by the Federal Fair Labor Standards Act, pursuant to the law in force prior to the amendments of May 5, 1961, and (b) prior to the second revision of Mandatory Decree No. 38, to the transportation of agricultural products from the farm to the market and of supplies from the market to the farm carried out by any farmer in his own vehicle.

[6] The first zone comprised the intra-urban routes of the Capital serviced by the Metropolitan Bus Authority; the second, the intra-urban routes of Ponce and Mayagüez; the third, all the other routes. At the

performing the work.[7] It is in the first revision of Mandatory Decree No. 38 that specific reference is made to school busses. In establishing the minimum wages for omnibus companies of the first zone an exclusion was introduced which reads: "School busses operating in this zone shall be considered included in the second zone."[8] The report of the committee designated to investigate the industry explained this situation as follows: "The Committee having official knowledge in the sense that in the metropolitan area (First Zone) there operate certain school-bus enterprises engaged in the transportation of students who are picked up and returned to their own homes, and that there are also in this zone *school busses property of the pedagogical institutions which operate them*; and realizing that this necessary student-transportation service does not represent the same economic characteristics of the omnibus companies engaged in the public transportation of passengers, has deemed it proper to exclude the school-bus enterprises of the First Zone, which shall be considered included in the new Second Zone created."

---

present time the classification is limited to the first zone, which comprises the routes served or to be served by the Metropolitan Bus Authority, and the second zone, which comprises all the other routes.

[7] In general terms the employees were classified as chauffeurs, skilled workers, semiskilled workers, and unskilled workers. In the determination of the minimum wage applicable plaintiff has been considered in the last classification, and in subsequent revisions in the group of "other workers", distinguishing them from the skilled workers.

"Unskilled worker" shall be every worker who performs work the execution of which does not require a previous training period; such as laborers or common workers, collectors, washers, watchmen, messengers, etc.

[8] The difference in wages fixed for "other workers" between the first zone and the second zone is noticeable:

| Mandatory Decree No. 38 | First Zone | Second Zone |
|---|---|---|
| First Revision (1960) | $0.95 | $0.50 |
| Second Revision (1962) | 1.10 | 0.63 |
| Third Revision (1965) | 1.25 | 0.70 |

In *Sec. of Labor* v. *Cementerio Católico Porta Coeli, supra,* we sustained the applicability of the decree of the construction industry to some employees of the appellant enterprise —the principal activity of which consisted in the operation of a private cemetery—who were engaged in excavation of graves and the preparation of molds and filling the latter with concrete. And in *Sierra Núñez* v. *Construction Equipment Corporation, supra,* which dealt with the driver of a truck who served ready-mixed concrete for constructions, we decided that the minimum wage applicable was that provided for the construction industry—Mandatory Decree No. 44—and not the one fixed for the stone, glass, and related products industry—Mandatory Decree No. 36.

■ In the present case, although appellants' principal activity is not affected by any decree, the phase of the students' transportation is covered by the decree concerning the transportation industry. It is so proved by the previous recital we have made. This is the proper case for the application of the rules we set forth at the outset of the opinion.

■ 2. Having established that the work performed by the appellee was covered by Mandatory Decrees Nos. 12 and 38, we still have to examine whether the determination to the effect that she worked an extra half-hour daily is supported by the preponderance of the evidence. The claimant's testimony, the only one to support such a determination, is inaccurate. It is significant that when appellants had already sold the enterprise to José D. Meléndez, she wrote a letter to the latter where she admitted that previously, when appellants were operating the school, she returned to her home at 2:00 p.m. and not at 3:00 p.m. as she alleged and tried to maintain.[9] On the other hand, her own testi-

---

[9] When she was confronted with this letter which contains an admission adverse to her interest, she tried to explain it by saying that she had so alleged in order to obtain an interview with the new owner. This is far from convincing.

mony establishes a noticeable discrepancy between the time used in picking up the children and bringing them to school in the morning—not over seventy-five minutes—and in returning them—two and a half hours, which discrepancy is not satisfactorily explained. It is true that we have decided that the claimant is not bound to prove the performance of the additional work with mathematical certainty, it being sufficient if he shows that the work was performed "if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Sec. of Labor* v. *Vélez*, 86 P.R.R. 555 (1962). However, where, as in the present case, the claim refers to such a short period as half an hour daily, it calls for a cautious standard which requires a certain degree of evidence which might fully satisfy the trier. We agree with appellants that such certainty does not prevail in the present case.[10]

For the reasons stated the judgment rendered by the Superior Court, San Juan Part, will be modified to eliminate the amount granted for extra hours, and as modified, it will be affirmed.

---

[10] Article IV(A) of Mandatory Decree No. 12 on maximum working periods, which is in force by virtue of § 40 of the Minimum Wage Act, *supra*, provides that: "No employer shall force or permit the employee to work: (1) more than eight hours in any day, (2) more than forty-eight hours in any week, (3) more than eight consecutive hours in any period, unless he pays said employee for work done during the ninth hour at a rate of not less than twice the regular wage rate, and for work done in hours additional to the ninth, a rate not less than one and one-half the wage rate he is then earning; Provided, that the waiting time required or permitted by the employer shall be paid at the straight-time rate and that when the waiting period is of an hour or more it shall not be considered for the computation of compensation for extra hours."

In view of the conclusion we have reached it is not necessary to decide appellants' contention in relation to the applicability of this section to appellee's waiting time. However, we point out that this provision was incorporated to the decree on February 1, 1948, prior to the approval of Act No. 379 of May 15 of the same year, 29 L.P.R.A. § 271 *et seq.*, and while the prevailing rule for overtime pay was *Cardona* v. *District Court*, 62 P.R.R. 59 (1943).